[Cite as *LublinSussman Group, L.L.P. v. Lee*, 2018-Ohio-666.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


LublinSussman Group LLP        Court of Appeals No. L-17-1077

     Appellant                      Trial Court No. CI0201502420

v.

Terri S. Lee                         **DECISION AND JUDGMENT**

     Appellee                        Decided: February 23, 2018

* * * * *

John J. McHugh, III, for appellant.

Christopher F. Parker, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, LublinSussman Group, LLP, appeals the March 16, 2017 judgment of the Lucas County Court of Common Pleas granting summary judgment in favor of appellee, Terri Lee. For the reasons that follow, we affirm, in part, and reverse, in part.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

1. The trial court erred prejudicially in entering summary judgment dismissing LublinSussman Group's breach of contract claim on its Second Amended and Restated Partnership Agreement (Partnership Agreement).

2. The trial court erred prejudicially in entering summary judgment in favor of Terri S. Lee on her wrongful termination and breach of contract claims arising under the Partnership Agreement.

## Factual Background

{¶ 3} Appellant is an accounting firm which was originally formed as a partnership in August 1997. On October 1, 2010, an amended partnership agreement ("partnership agreement") was made "to restate the written partnership agreement" and "to continue to conduct their professional practice." Five partners entered into the partnership agreement, including appellee and Lee D. Wunschel.

{¶ 4} In September 2014, appellant held a meeting which was attended by all of the partners except appellee, who was not invited. The partners present at the meeting voted unanimously to remove appellee as a partner. Wunschel, in his affidavit, states the partners considered and acted upon the following facts in reaching the decision to remove appellee:

a) [Appellee]'s performance over time did not keep pace with the increased responsibilities of a partner in [appellant];

2.

b) [Appellee] was consistently late in performing and delivering audit reports for [appellant's] clients, especially the State of Ohio;

c) [Appellee] was aware that a moratorium had been placed by the State of Ohio on assignments for [appellant], which was attributed to her tardiness in delivering reports, yet failed to notify [appellant] of this action, or to request assistance in curing the delays;

d) [Appellee] was regularly late in providing and reviewing internal financial statements for [appellant];

e) [Appellee] defaulted on training and development of [appellant] staff and employees, even though she had volunteered to assume such responsibility;

f) [Appellee]'s performance in business development was less than adequate;

g) [Appellee]'s performance in personal leadership inside [appellant] was unsatisfactory;

h) [Appellee] failed to make any significant improvement in output or development performance after adverse reviews in May, 2014, with partners Thomas Jaffe and me; and,

i) [Appellee] appeared to have determined that she would seek employment elsewhere after the September 30 fiscal year end when she failed to volunteer to accept responsibility for coordinating the 2014

3.

[appellant] peer review, which is a triennial requirement of the Accountancy Board of Ohio and the AICPA.

{¶ 5} On September 17, 2014, appellant gave appellee written notice she was removed as a partner, with the effective date of the removal being November 16, 2014. After she was removed, appellee started her own accounting practice and began servicing some of appellant's past clients. Appellant claimed this action subjected appellee to certain provisions of the partnership agreement, such that appellant concluded appellee owed the partnership $201,907. Appellant alleged the amount was due to an "excess of clients over retirement value account" valued at $62,137, a "deficit accrual basis capital" valued at $137,770 and, an "accounts receivables due and owing" valued at $3,000.

{¶ 6} Appellant sought to recover the amount owed by appellee through informal negotiations, however, the negotiations were unsuccessful and appellant filed its complaint for breach of contract on April 28, 2015.

{¶ 7} Appellee answered the complaint and filed a four-count counterclaim. In Count 1 of the counterclaim, she alleged she was wrongfully expelled as a partner. In Count 2, appellee alleged appellant and the remaining partners breached their fiduciary duties when they expelled her from the partnership. In Count 3, she alleged appellant improperly exercised a right of set-off which was not permitted by the partnership agreement. In Count 4, appellee sought a declaration that any provision of the partnership agreement that treated her involuntary expulsion as a voluntary withdrawal was unenforceable. Appellee sought the balances due from her accrual basis capital

("ABC") account and retirement value ("RV") account without set-off. She also demanded her final three draw installments, which totaled $16,500.

{¶ 8} On January 15, 2016, appellant moved for summary judgment on its claim for breach of contract, as well as on appellee's counterclaims. Appellee opposed the motion and moved for summary judgment on her claims. On August 3, 2016, the trial court entered partial summary judgment finding against appellant on its breach of contract claim and in favor of appellee on her wrongful termination and breach of contract claims. Appellee's other claims were deemed moot.

{¶ 9} The trial court only entered partial summary judgment because it did not grant appellee's demand for her final three account draws. Appellant appealed. The appeal was dismissed for want of a final appealable order. *See LublinSussman Group, LLP v. Lee*, 6th Dist. Lucas No. L-16-1206 (Oct. 27, 2016).

{¶ 10} After remand, appellee amended her counterclaim to eliminate the demand for the final draws. The summary judgment motions were resubmitted for final decision. On March 16, 2017, the trial court granted summary judgment in favor of appellee consistent with its previous judgment, concluding as follows:

> [Appellant]'s claim for breach of contract, as well as [appellee]'s counterclaims, can be decided as a matter of law by this Court under Civ.R. 56. As described above, [appellee] is first entitled to summary judgment on [appellant]'s claim for breach of contract. Furthermore, [appellee] is entitled to summary judgment on her counterclaim against [appellant] for

5.

wrongful termination, and [appellee]'s further counterclaims for breach of fiduciary duties and declaratory judgment are moot. Given that [appellee]'s removal/termination from the partnership was an "involuntary withdrawal" under the Agreement, she is also entitled to summary judgment on her counterclaim against [appellant] for breach of contract. [Appellee] is therefore entitled to the value of her ABC and RVA accounts in the amounts of $25,080.83 and $10,006.00, respectively.

{¶ 11} Appellant timely appealed.

### Standard of Review

{¶ 12} Pursuant to Civ.R. 56, the moving party bears the initial burden of informing the trial court of the basis for the motion and presenting evidence in support thereof. *Vahila v. Hall*, 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164 (1997); *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). *Accord Lopez v. Home Depot, USA, Inc.*, 6th Dist. Lucas No. L-02-1248, 2003-Ohio-2132, ¶ 7.

{¶ 13} A trial court must deny a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork S. Corp.*, 11th Dist. Ashtabula No. 2002-A-0061, 2003-Ohio-6682, ¶ 36. The issue is

6.

"whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶ 14} We review a grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**First Assignment of Error**

{¶ 15} Appellant asserts the trial court erred in granting summary judgment and dismissing its breach of contract claim because, based on the express language of the partnership agreement, appellee breached the partnership agreement and should have been treated as if she voluntarily withdrew from the partnership. Appellee counters no error occurred, as she did not breach the partnership agreement because she was involuntarily removed as a partner.

{¶ 16} Generally, a breach of contract occurs when (1) "a party demonstrates the existence of a binding contract or agreement"; (2) "the non-breaching party performed its contractual obligations"; (3) "the other party failed to fulfill its contractual obligations without legal excuse"; and (4) "the non-breaching party suffered damages as a result of the breach." *Ngo v. Paramount Care, Inc.*, 6th Dist. Lucas No. L-05-1359, 2006-Ohio-3874, ¶ 11.

{¶ 17} "In cases where the facts are undisputed, and the only question to be resolved is whether a breach of contract occurred, a question of law exists for the court

7.

to decide." *Bank of New York Mellon v. Lewis*, 6th Dist. Erie No. E-13-051, 2014-Ohio-5599, ¶ 81. "However, when there is a dispute as to whether the parties' respective actions are sufficient to satisfy the terms of the contract," *id.*, or "[w]hen a court finds an ambiguity in the contract language," a question of fact is presented and extrinsic evidence may be considered. *Savoy Hosp., LLC v. 5839 Monroe St. Assocs., LLC*, 6th Dist. Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 31.

{¶ 18} To determine whether a breach of contract occurred in this case, we first must review the relevant language of the partnership agreement.

{¶ 19} The construction of a written agreement is a matter of law for the court. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. A contract must be examined as a whole, and the court presumes the intent of the parties is reflected in the language. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. Words in a contract will be given their plain and ordinary meaning unless "manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander* at paragraph two of the syllabus. Moreover, the court must give effect to the words used in the contract, and not delete or insert words. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988).

{¶ 20} When the language in a contract is clear and unambiguous, a court may look no further than the writing itself to ascertain the intent of the parties. *Alexander* at paragraph two of the syllabus. On the other hand, contractual language is ambiguous

8.

where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations. *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, 784 N.E.2d 186, ¶ 18 (10th Dist.).

{¶ 21} When there is an ambiguity in the language of a contract, the court first looks to extrinsic evidence to determine the parties' intent. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 246, 313 N.E.2d 374 (1974), paragraph one of the syllabus; *Cline v. Rose*, 96 Ohio App.3d 611, 615, 645 N.E.2d 806 (3d Dist.1994). Extrinsic evidence may indicate "the circumstances which surrounded the parties at the time [the agreement] was made, the object intended to be accomplished, and the construction which the acts of the parties show they gave to their agreement." *Mosier v. Parry*, 60 Ohio St. 388, 401, 54 N.E. 364 (1899), paragraph one of the syllabus. However, when extrinsic evidence does not clarify the meaning of the contract, the court applies the secondary rule of contract construction and strictly construes the ambiguous language against the drafter of the contract. *Reida v. Thermal Seal*, 10th Dist. Franklin No. 02AP-308, 2002-Ohio-6968, ¶ 29. *See also Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 314, 667 N.E.2d 949 (1996).

{¶ 22} Here, the relevant language of the partnership agreement is set forth in Paragraphs 11, 18 and 19, as follows:

9.

11. <u>Determining Accrual Basis Capital Accounts of Partners:</u>

* * *

(3) Liability for amounts due to a withdrawn partner or partners will not be considered except where a partner enters into competition with the partnership within 24 months of a voluntary withdrawal. In that instance, the withdrawing partner will be charged for and will be liable for his current earnings percentage of the total outstanding retirement obligation of the partnership to all withdrawn partners at the time of withdrawal. * * *

18. <u>Dissolution Because of Withdrawal * * *:</u>

A. <u>Withdrawal:</u> Any partner may elect to withdraw from the partnership upon giving the other partners 60 days prior written notice as provided in Paragraph 24I.

(1) <u>Removal of a Partner</u>: A partner shall not be subject to removal as a partner except by a unanimous vote of the remaining partners. It shall be the policy of the partnership that except in unusual cases (such as material inability, incapability of performing services adequately to the satisfaction of the other partners and the clients, or creating discord among the partners of employees or repeated inadequate service or performance as a partner[)], in the good faith opinion of the partners, no partner shall be removed otherwise than for (a) gross misconduct, loss of professional license, conviction of a crime of such character as seriously injures the

general reputation of the partnership or renders the partner incapable of reasonably performing his duties as a partner of the partnership or (b) willful failure or neglect (after written notice from the partnership) reasonably to devote substantially his full time and energies in good faith to the welfare of the partnership.  However, if there is a unanimous vote of all the partners (excluding the partner in question) such partner shall be subject to removal.  Such a removal, being an involuntary withdrawal, shall be deemed an election by the partner to withdraw pursuant to Paragraph 19 hereof and a withdrawal under this Paragraph 18.  Written notice of such removal shall be given to the affected partner at least 60 days prior to removal. * * *

C.  <u>Valuation of Partnership Interest:</u>  Subject to Paragraph 19, the value of the interest of a withdrawing * * * partner, shall be valued as of the end of the calendar month closest to the effective date of dissolution, namely, the prior month if such date is earlier than the first 15 days of the month[,] or the end of the next month, if such date is on the 15th or later day of a calendar month and shall be the sum of:

(1) His ABC account;

(2) His Retirement Value Account.* * *

19. <u>Withdrawal:</u>

A.  Upon withdrawal of a partner, the partnership shall liquidate the withdrawing partner's interest in the partnership at the price set forth in Paragraph 18C except in the case of a partner who voluntarily withdraws and goes into competition with the partnership.  In that instance, his Accrual Basis Capital Account will be reduced by charging his current earning percentage to the total outstanding retirement obligation to all retired partners at that time, as stated in Paragraph 11A(3).

B. Withdrawal and Continuation in Practice:  In the event a withdrawing partner continues in the practice of public accounting, he will be permitted to take the accounts (client) he services.  However, if such partner should voluntarily withdraw, he shall receive his Retirement Value Account only to the extent of the value of the accounts taken with him (as described at Subparagraph (2)b which follows).  This paragraph is intended to clarify the mechanics by which a withdrawing partner takes accounts and the valuation thereof and to distinguish between voluntary and involuntary withdrawal.

(1) The partner shall pay the partnership the average of the three (3) years' billing to all clients taken based on the partnership's three (3) most recently completed fiscal years preceding the date of withdrawal.* * * In addition, 120 days after withdrawal, the withdrawing partner shall purchase

all outstanding accounts receivable on accounts he takes. The total value of business and accounts receivable will be used to reduce amounts due the withdrawing partner in accordance with Paragraph 18C of this Agreement. The provisions of this paragraph will apply to all accounts transferred during the two-year period commencing on the day after the effective withdrawal date of the partner. * * *

{¶ 23} Appellant argued, in support of summary judgment, the intent in drafting the language in Paragraph 18.A.(1) was to protect the remaining partners in the event a partner was removed and proceeded to take partnership clientele to his or her new practice. Specifically, appellant asserted that in that instance "[s]uch a removal, being an involuntary withdrawal, shall be deemed an election[,]" and this clause of the partnership agreement operated to treat the removed partner as if she had voluntarily withdrawn. The word "elect" is used immediately above, in Paragraph 18.A., and in that provision it states that "[a]ny partner may elect to withdraw from the partnership."

{¶ 24} Appellant, consistent with this construction, treated appellee as if she had voluntarily withdrawn when she was removed as a partner. According to appellant, appellee was then subject to Paragraphs 11.A.(3) and 19.B. because she proceeded to take clients and compete with the partnership. As a result, her ABC account was reduced, which charged "current earning percentage to the total outstanding retirement obligation to all retired partners at that time[.]" According to appellant, appellee was also then

responsible for paying "the partnership the average of three (3) years billings to all clients taken[,]" as required under Paragraph 19.B.(1).

{¶ 25} Appellee opposed the summary judgment and supported her position regarding the breach of contract claim by asserting that she did not draft the partnership agreement, and the removal provision of Paragraph 18.A.(1) was explained to her prior to entering into the partnership agreement, "to protect partners against unfair removal." Appellee argued she did not voluntarily quit or withdraw as a partner. Appellee asserted any reading of Paragraph 18 which required her, as a removed partner, to be treated as if she voluntarily withdrew from the partnership was "inequitable, unfair, ambiguous, and * * * unenforceable[.]"

{¶ 26} The trial court found, in granting summary judgment to appellee that paragraph 19 of the partnership agreement prevented appellee's removal from being considered a "voluntary withdrawal" from the partnership, and Paragraph 18A.(1) did not control appellee's withdrawal from the partnership because the partnership was not dissolved.

{¶ 27} Our review of the record shows both parties acknowledged appellee executed the partnership agreement. Moreover, we find the partnership agreement is a binding contract. An examination of the language in Paragraphs 11 and 19 of the partnership agreement reveals the language is clear and unambiguous. More particularly, in Paragraph 19.B., there is a definite distinction made between a partner who voluntarily withdraws and one who involuntarily withdraws. That relevant section reads "[t]his

14.

paragraph is intended to clarify the mechanics by which a withdrawing partner takes accounts and the valuation thereof and to distinguish between voluntary and involuntary withdrawal." As this language of the partnership agreement is unambiguous, we must enforce it, not interpret it.

{¶ 28} With respect to Paragraph 18, it is entitled "Dissolution Because of Withdrawal * * * of a Partner." However, only subparagraph B of Paragraph 18 discusses the dissolution of the partnership. Paragraph 18.A.(1), C. and D. make no mention of dissolution. The language of Paragraph 18.A.(1) sets forth the manner in which a partner may withdraw as well as the method by which a partner can be removed. The language of Paragraph 18.C. describes how to value the partnership interest of a withdrawing (or disabled or deceased) partner, while the language of Paragraph 18.D. characterizes certain payments and monies for tax purposes. We find that Paragraph 18 addresses more than merely the dissolution of the partnership, thus the title of Paragraph 18 is not dispositive of the entire scope of information included in that paragraph. We therefore find Paragraph 18.A.(1) applies to situations, where, as here, a partner must withdraw from the partnership due to removal, yet the partnership is not dissolved.

{¶ 29} The relevant portion of Paragraph 18.A.(1) states "[s]uch a removal, being an involuntary withdrawal, shall be deemed an election to withdraw pursuant to Paragraph 19 hereof and a withdrawal under this Paragraph 18." We find, based on our de novo review and giving effect to the words used and not deleting or inserting words, that this language is ambiguous. The phrase "shall be deemed an election to withdraw"

15.

followed by "[s]uch a removal, being an involuntary withdrawal," is unclear and creates a conflict. Moreover, the term "voluntary withdrawal" is not used in Paragraph 18.A.(1), but Paragraph 19 is referenced, which does use the term "voluntary withdrawal." Paragraph 18.A.(1) also refers to "this Paragraph 18," which employs the term "elect to withdraw" but not "voluntary withdrawal." Since the language of Paragraph 18.A.(1) is conflicting and reasonably susceptible to more than one interpretation, we must look to extrinsic evidence to discover the parties' intent.

{¶ 30} An examination of the record shows there is no direct evidence of the intent of the parties. Appellant offered evidence which implied that a removed partner would be treated as if the partner had voluntarily withdrawn, under Paragraph 18.A.(1) of the partnership agreement. In contrast, appellee presented evidence that she did not voluntarily quit or withdraw as a partner and the removal provision in Paragraph 18.A.(1), as explained to her, "was established to protect partners against unfair removal."

{¶ 31} We find the extrinsic evidence submitted by the parties does not clarify the meaning of Paragraph 18.A.(1) of the partnership agreement. Thus, we must strictly construe the ambiguous language of the partnership agreement against the drafter. Appellant drafted the partnership agreement. Construing the language in Paragraph 18.A.(1) against appellant, we find the removal of a partner to be an involuntary withdrawal from the partnership.

16.

{¶ 32} Upon review of the record, the evidence is undisputed that appellee was removed as a partner. As such, appellee involuntarily withdrew from the partnership. Pursuant to Paragraph 19.A., "[u]pon withdrawal of a partner, the partnership shall liquidate the withdrawing partner's interest in the partnership at the price set forth in Paragraph 18.C. * * *." Paragraph 18.C. provides the value of the interest of the withdrawing partner (appellee) is the sum of her ABC account and her RV account. There is no provision in the partnership agreement to reduce the ABC account or RV account when the involuntary withdrawal of a partner occurs. Therefore, neither Paragraph 11.A.(3) or the portion of Paragraph 19.B which references the retirement value account applies.

{¶ 33} The record further shows after appellee involuntarily withdrew from the partnership, she did engage some of appellant's clients in her new practice. Paragraph 19.B. states, "[i]n the event a withdrawing partner continues in the practice of public accounting, he will be permitted to take the accounts (client) he services. * * * (1) The partner shall pay the partnership the average of the three (3) years billing to all clients * * *. In addition, 120 days after withdrawal, the withdrawing partner shall purchase all outstanding accounts receivable on accounts he takes." Appellee owes this sum to appellant, and pursuant to Paragraph 19.B.(1), "[t]he total value of business and accounts receivable will be used to reduce amounts due the withdrawing partner in accordance with Paragraph 18C of this Agreement." Thus, appellee is entitled to the full amounts of her ABC and RV accounts, valued as of November 30, 2014, pursuant to Paragraph

17.

18.C., less the amounts she owes appellant for the clients she took, as well the outstanding accounts receivable on the accounts she took. The trial court shall determine the exact amounts on remand.

{¶ 34} Based upon the foregoing, we find appellee did breach the partnership agreement to the extent that she owes appellant certain monies pursuant to Paragraph 19.B. Accordingly, appellant's first assignment of error is well-taken, in part, and not well-taken, in part.

## Second Assignment of Error

{¶ 35} In the second assigned error, appellant asserts the court erred in entering summary judgment in favor of appellee on her claims for wrongful termination and breach of contract. Appellee argues the court did not err because she was not properly notified of or invited to the "special meeting" or given a chance to challenge her unfair removal.

{¶ 36} With respect to the wrongful termination claim, a review of the record shows appellant moved for summary judgment as to this claim and supported its position with averments in Lee D. Wunschel's affidavit concerning appellee's performance as a partner. Appellee also moved for summary judgment as to her wrongful termination claim, but offered no evidence in support of this claim. Since appellant presented evidence that appellee was not wrongfully terminated, and appellee failed to provide evidence that she was wrongfully terminated, appellant met its summary judgment burden as to this claim while appellee failed to meet her burden. *See* Civ.R. 56, *Vahila v.*

18.

*Hall,* 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164 and *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Therefore, appellant was entitled to summary judgment on appellee's wrongful termination claim, and appellee was not entitled to summary judgment on her wrongful termination claim. Accordingly, appellant's second assignment of error is well-taken as to this claim.

{¶ 37} With respect to the breach of contract claim, a review of the record shows appellee met her burden of showing appellant breached the partnership agreement by not paying her interest in the partnership upon her withdrawal, as required under Paragraph 19.A. It follows that appellee was entitled to summary judgment on her breach of contract claim. Accordingly, appellant's second assignment of error is not well-taken as to this claim.

### Conclusion

{¶ 38} The judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. The matter is remanded to proceed in a manner consistent with this decision. Appellant and appellee are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.
_____
JUDGE

Arlene Singer, J.
CONCUR.
_____
JUDGE

Christine E. Mayle, P.J.
_____
CONCURS IN PART AND
JUDGE
DISSENTS IN PART.

**MAYLE, P.J.**

{¶ 39} I concur with the majority's findings that the appellee breached the partnership agreement and that the appellee is not entitled to summary judgment on her wrongful-termination counterclaim. Unlike the majority, however, I believe that the partnership agreement is unambiguous in that it explicitly provides that removal by unanimous partner vote is deemed "an election by the partner to withdraw," which is synonymous with a "voluntary withdrawal," for purposes of calculating the withdrawing partner's ABC and RV accounts and corresponding set-offs under Paragraphs 18 and 19 of the contract. Accordingly, I dissent to the extent that I would reverse the trial court's

judgment and enter judgment for appellant on its breach-of-contract claim and remand for a full determination of damages as required by Paragraphs 18 and 19 (first assignment of error), and reverse and enter judgment for appellant on both counterclaims (second assignment of error).

{¶ 40} The relevant sentence of Paragraph 18.A.(1) states, in full: "Such a removal [by unanimous vote of all other partners], being an involuntary withdrawal, *shall be deemed an election by the partner to withdraw pursuant to Paragraph 19 hereof and a withdrawal under this Paragraph 18*." (Emphasis added.) The majority finds this provision ambiguous and, absent extrinsic evidence of the parties' intent, interprets the provision against the drafter (appellant) and concludes that a removal by unanimous partner vote is an involuntary withdrawal. That interpretation, however, renders the italicized portion of Paragraph 18.A.(1) meaningless. "When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary." *Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, 888 N.E.2d 1062, ¶ 22. "In determining the meaning of the contract, a court must consider all of its parts, and no provision should be wholly disregarded as inconsistent with the other provisions unless no other reasonable construction is possible." *Reams v. Reams*, 6th Dist. Lucas Nos. L-04-1276 and L-04-1329, 2005-Ohio-5264, ¶ 22.

{¶ 41} Rather than rendering a portion of Paragraph 18.A.(1) meaningless, I believe that the court can harmonize the seemingly conflicting provisions of the contract

by considering the "plain and ordinary" meaning of the language used in those provisions and thereby give meaning and purpose to all of its parts. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37 (When interpreting a contract, a court should look to "the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement."); *see also Reams* at ¶ 22, quoting *State Auto. Ins. Co. v. Childress*, 1st Dist. Hamilton No. C-960376, 1997 Ohio App. LEXIS 88 (Jan. 15, 1997) ("'[c]onstruction of the contract should attempt to harmonize all of the provisions rather than create conflicts in them' * * *.").

{¶ 42} In my view, the beginning portion of the relevant sentence of Paragraph 18.A.(1)—"Such a removal [by unanimous vote of all other partners], being an involuntary withdrawal * * *"—simply recognizes the reality of the situation absent an agreement to the contrary:  i.e., the partner is being involuntarily removed from the partnership.  "Involuntary," as relevant here, means "dictated by authority or circumstance : COMPULSORY."  *Webster's Third New International Dictionary of the English Language Unabridged* 1191 (1961).  The provision then specifies that, notwithstanding the otherwise "involuntary" nature of the withdrawal, the parties agree to treat the withdrawal in a different manner.  That is, the parties agreed that such an involuntary withdrawal "shall be deemed" to be (1) "an election by the partner to withdraw pursuant to Paragraph 19 hereof" and (2) "a withdrawal under this Paragraph 18."

22.

**{¶ 43}** Looking first to Paragraph 18, that paragraph provides: "A. <u>Withdrawal</u>: Any partner may *elect to withdraw* from the partnership upon giving the other partners 60 days prior written notice * * *." (Emphasis added.) And although Paragraph 19 does not use the exact phrase that is used in Paragraph 18.A.(1) (i.e., "an election by the partner to withdraw"), it does detail the financial implications for a partner who "*voluntarily withdraws* and goes into competition with the partnership." (Emphasis added.) Reading the contract as a whole and harmonizing its parts, it appears that the normal mechanism for a "voluntary withdrawal" under Paragraph 19 is the procedure outlined in Paragraph 18.A.: i.e., the voluntarily withdrawing partner must provide 60-days' prior written notice that he or she "elect[s] to withdraw" from the partnership. In other words, an "election to withdraw" and a "voluntary withdrawal" are one and the same. Moreover, the plain and ordinary meaning of the words "voluntary" and "elect," when used in this context, are virtually synonymous. The word "voluntary" means "proceeding from the will : produced in or by an act of choice," and "elect," when used as a transitive verb, means "to make a selection of : CHOOSE" or "to choose (a course of action) esp. by preference : decide upon." *Webster's Third New International Dictionary of the English Language Unabridged* 731, 2564 (1961).

**{¶ 44}** Thus, when the various provisions of Paragraphs 18 and 19 are read together according to their plain and ordinary meaning, there is no conflict or ambiguity: in Paragraph 18.A.(1), the parties agreed that the removal of a partner by unanimous vote of the other partners, which would otherwise be an "involuntary withdrawal," shall be

23.

deemed an "election by the partner to withdraw"—which is synonymous with a "voluntary withdrawal"—for purposes of calculating the withdrawing partner's ABC and RV accounts and corresponding set-offs under Paragraphs 18 and 19 of the contract.

{¶ 45} Accordingly, I would reverse and enter judgment for appellant on its breach-of-contract claim and remand for a full determination of damages as required by Paragraphs 18 and 19 (first assignment of error), and reverse and enter judgment for appellant on both counterclaims (second assignment of error).

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.