DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, in a post-divorce case regarding the interpretation of terms of a separation agreement as to the value and division of a retirement account. Because we conclude that the trial court did not abuse its discretion in assigning a value to the spouses' monthly share, we affirm.
 {¶ 2} Appellant, Timothy K. Scherer and appellee, Katherine C. Yarder, were granted a dissolution in July 1996. The final decree incorporated the couple's separation agreement, signed on May 31, 1996. In September 2001, appellee filed a motion to cause or, in the alternative, a request for declaratory judgment, alleging that appellant had retired, but she was not receiving payments as set out in the dissolution agreement. Appellant opposed this motion.
 {¶ 3} On June 13, 20002, a magistrate conducted a hearing which included testimony from the parties and William C. Kimmelman, the evaluator who provided pension values at the time of the original dissolution. The following facts were derived from the magistrate's findings and other evidence presented to the court.
 {¶ 4} Kimmelman testified that at the time of the dissolution proceedings in 1996, he calculated the then present-day total value of appellant's State Teachers Retirement System ("STRS") account to be $200,379.54. Since the benefits had accrued entirely during the twenty-one year marriage, appellee was entitled to one-half of those benefits. Payment of any benefits were deferred until appellant retired. At the time of the separation agreement, the evaluator had projected benefits based upon appellant's retirement at age 60. Although appellant worked only another three years and retired at age 54, he still had 30 years in the system, accumulated as follows. Appellant worked 26 actual years in a public school and purchased 3 additional years in 1993 and 1 in 2001. Since 3 of the additional years were purchased during the 21 year marriage, Kimmelman determined that appellee was entitled to benefits based upon a ratio of 24/30.
 {¶ 5} Kimmelman calculated the current value of appellee's monthly benefit based upon information from the STRS. The evaluator applied the 24/30 ratio to one-half of appellant's current gross monthly benefit of $4,277.90,[1] to calculate appellee's monthly share to be $1,711.16. He stated that this benefit would likely need annual readjustment for any cost of living increases.
 {¶ 6} Appellant testified that he retired on June 1, 2001 and on August 1, 2001, began receiving pension benefits from the STRS. While legally receiving retirement benefits, appellant resumed employment as a school superintendent, drawing a yearly salary of $76,400 and again contributing to STRS. Appellant did not notify appellee when he retired, but later made several payments to appellee, in January, February, and March 2002, totaling $4,000. At the time of the show cause hearing, he was not making monthly payments from his $3,800 monthly payment, which had recently increased by an additional $112 per month. Appellant stated that, although he did not know the exact amount appellee was to receive, he believed it was limited to the value placed on appellee's portion at the time of the dissolution.
 {¶ 7} Appellee testified that appellant failed to inform her when he began receiving pension benefits and that she hired Kimmelman to determine the monthly amount she should receive. Appellee acknowledged receiving appellant's payments totaling $4,000 toward benefits owed, but she was not receiving regular monthly payments. She stated that she also had not received an anticipated $5,000 from appellant as part of a severance package, since he left his employment earlier than expected which was before he qualified for the severance pay. Appellee also requested interest and the arrearage owed by appellant, cost of living increases, attorney fees, and Kimmelman's costs.
 {¶ 8} The magistrate found that the calculations presented by Kimmelman accurately reflected the parties' agreement and ruled that appellee is entitled to $1,711, 16 per month as her share of appellant's STRS pension. Appellee was also awarded a lump sum judgment of $16,535.04 plus ten per cent interest for the unpaid balance from June 1, 2001 through June 30, 2002, $2,254.74 in attorney fees, and Kimmelman's fees. Appellant was found in contempt of the prior court order, sentenced to 30 days incarceration, with the following purge conditions to be completed within 30 days: payment of $8,000 to appellee; payment of appellee's attorney fees; payment of Kimmelman's expenses; purchase of an annuity to assure appellee's pension rights; and cooperation in the establishment of a QDRO for payments made directly to appellee. After an independent review, the trial court overruled appellant's objections and adopted the magistrate's decision.
 {¶ 9} Appellant now appeals that judgment, setting forth the following two assignments of error:
 {¶ 10} "A. The trial court erred, as a matter of law, by modifying the division of the husband's STRS pension without jurisdiction to do so.
 {¶ 11} "B. The trial court erred, as a matter of law, by fashioning an equitable remedy that is inconsistent with the contractual agreement of the parties."
 {¶ 12} We will address appellant's two assignments of error together. Appellant first contends that the trial court had no jurisdiction to "modify" the division of his pension. This argument is without merit.
 {¶ 13} While a trial court does not have continuing jurisdiction to modify or amend a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment. In re Dissolution ofMarriage of Seders (1987), 42 Ohio App.3d 155. Pursuant to R.C. 3105.65, a domestic relations court may enforce a decree of dissolution and, "where there is confusion over the interpretation to be given to a particular clause, the trial court in enforcing the agreement has the power to hear the matter, clarify the confusion, and resolve the dispute."In re Dissolution of Marriage of Seders, supra at 156-157. See alsoQuisenberry v. Quisenberry (1993), 91 Ohio App.3d 341, citing In ReDissolution of Marriage of Seders.
 {¶ 14} In this case, the trial court did not modify the parties' agreement but, rather, clarified the terms regarding the original marital property division, namely, the value and payment of appellee's portion of appellant's pension. Therefore, the court merely exercised its continuing jurisdiction to interpret and enforce the provisions of its prior judgment.
 {¶ 15} We will now examine the trial court's decision regarding the division of appellant's pension. In interpreting a divorce decree that incorporates the parties' separation agreement, the normal rules of contract interpretation generally apply to ascertain the meaning of any ambiguous language. See Patel v. Patel (Mar. 23, 1999), Athens App. No. 98CA29 and 98 CA 30; Keeley v. Keeley (July 21, 1997), Clermont App. No. CA97-02-013; Scott v. Scott (Apr. 29, 1994), Lucas App. No. L- 93-251. When construing contract language, the principal goal is to effectuate the parties' intent. See Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus; Patel, supra. A court will presume that the parties' intent resides in the language employed in the written document. See Kelly v. Medical Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of syllabus; Patel, supra. Thus, a court will give common words appearing in a written instrument their ordinary meaning, unless manifest absurdity results or unless some other meaning is clearly evidenced from the instrument. See Alexander v. Buckeye PipeLine Co. (1978), 53 Ohio St.2d 241, paragraph two of syllabus.
 {¶ 16} The standard of appellate review of a trial court's interpretation of a dissolution agreement depends upon whether the language is ambiguous.
 {¶ 17} "[I]f the document is ambiguous, there is a question of fact to be resolved by the trial court, and therefore our review is abuse of discretion. The threshold question of whether an ambiguity exists is a question of law that we review de novo." Peters v. Peters (Feb. 23, 2001), Montgomery App. No. 18445. See, also, Weller v. Weller (1996),115 Ohio App.3d 173, 179; Rodgers v. Rodgers (Apr. 11, 2001), Summit App. No. 20242; In re Simpson (Mar. 31, 2000), Marion App. No. 9-99-67;Scott, supra. On appellate review, a trial court's interpretation of the ambiguous terms of a separation agreement will not be disturbed absent an abuse of discretion. In re Seders, supra. An abuse of discretion suggests more than an error of law or judgment; it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} In this case, the parties disagree as to what certain terms meant in the agreement regarding the valuation of pension benefits. Thus, as we previously determined, the trial court went on to clarify the meaning and intent of the parties' agreement, which states in pertinent part:
 {¶ 19} "Wife shall have and receive as her property one-half the value of Husband's Retirement Benefit through the State Teachers Retirement System as accrued through the date of this agreement.
 {¶ 20} "In the event the participant (Husband) merges his service credits in his STRS account with service credits earned under another plan sponsored by another retirement system, including PERS, SERS, a military retirement plan, the alternate payee (Wife) shall remain entitled to a portion of the participant's retirement benefits as set forth herein, regardless of which retirement system actually pays the benefits. The service credits that were earned under such other retirement systems shall be included, to the extent applicable, in the calculation of the alternate payee (Wife) share as set forth herein.
 {¶ 21} "Wife shall receive one-half (1/2), to the extent of the benefits that she is entitled to receive as defined herein, of any cost of living increase realized by the Husband in his STRS benefits from the date of his receipt of his benefits to the date of his death."
 {¶ 22} In this case, we agree with the trial court that the language of the agreement, "one-half the value of Husband's Retirement Benefit through the State Teachers Retirement System as accrued through the date of this agreement" is somewhat ambiguous. Although the parties knew the then present-day value of appellant's pension at the time of the dissolution, that valuation only was meaningful if appellee was awarded her portion of the pension, i.e., $100,180, at the time of the dissolution. She would have then been able to invest her share for future distribution. Since the agreement anticipates that the retirement benefits will be received in the future, however, appellee is entitled to the growth of her portion of the marital share due to deferment. This division is equitable because appellant also reaped the benefit of retaining appellee's share in his pension while deferring paying her part of the marital property until future distribution. In our view, the language of the parties' agreement reflects the common understanding that it is equitable for a divorced spouse to participate in the other spouse's later distributed retirement benefits in proportion to their years of marriage. Therefore, the trial court did not abuse its discretion in accepting Kimmelman's calculations based upon the ratio of 24 years attributed to marital funds to appellant's total 30 years of contributions.
 {¶ 23} Accordingly, appellant's two assignments of error are not well-taken.
 {¶ 24} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Court costs of this appeal are assessed to appellant.
Judgment affirmed.
Handwork, P.J., and Knepper, J., concur.
[1] Appellant had opted to take a lower monthly pay out of $3,738.03 with a 25-year joint and survivor option, which would guarantee payments to his current spouse even if he died. Kimmelman utilized the higher monthly payment of $4,277.90 under a Single Life Annuity payment plan.