DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, in response to a post-divorce Civ.R. 60(B) motion for relief from a Qualified Domestic Relations Order ("QDRO") which addressed the division and distribution of appellant's retirement benefits. Because we conclude that the trial court did not abuse its discretion in denying appellant's Civ.R. 60(B) motion, we affirm.
 {¶ 2} Appellant, William P. Hille, and appellee, Elizabeth A. Peppas (fka Hille) were married in February 1975 and granted a divorce in January 2000. Incorporated into the final divorce decree was a separation agreement which stated, in pertinent part:
 {¶ 3} "(i) Wife shall receive fifty percent (50%) of Husband's accrued retirement benefits through September 1, 1999, and said benefits shall be calculated by Central States Pension as if Husband were to have left his employment on that date. All retirement benefits earned or accumulated concerning the Husband's share after September 1, 1999 shall remain as the property of the Husband and payment shall commence upon the Husband's retirement. The commencement date for the determination of the Wife's share shall be the marital date for the parties, to wit: February 7, 1975. The aforementioned award shall be effectuated by a Qualified Domestic Relations Order, which the parties agree shall be prepared by Attorney Kimmelman, at the expense of Husband"
 {¶ 4} On October 30, 2000, a QDRO, prepared and signed by appellant's counsel and signed by appellee's counsel, was filed with the trial court. A copy was also served upon the plan administrator for Central States, Southeast and Southwest Areas Pension Fund ("Central States"), appellant's pension fund. The QDRO stated that the amount of appellee's share would be calculated "by multiplying the participant's monthly benefit at the time of the alternate payee's commencement of benefits by a fraction the numerator of which is the participant's service credit accrued during the marriage (02/07/75 through 9/01/99) and the denominator of which is the participant's service credit as of the alternate payee's benefit effective date and multiplying the result by fifty percent (50%). However, in no event shall the fraction in the preceding sentence be greater than one.
 {¶ 5} "In addition, the alternate payee shall receive a pro-rata share of any post-retirement cost of living adjustments or other economic improvements made to the participant's benefits on or after the date of the participant's retirement. Such pro-rata share shall be calculated in the same manner as the alternate payee's share of the participant's retirement benefits as set forth in the immediately preceding paragraph."
 {¶ 6} In 2003, appellant retired and began receiving $2,100 monthly payments from his pension. Pursuant to the QDRO language, the Central States administrator calculated appellee's share according to the ratio of 22 marital years to appellant's total number of years in the pension plan, 26.
 {¶ 7} On June 18, 2003, appellant filed a Civ.R. 60(B) motion for relief from the October 30, 2000 QDRO, asserting "mistake" as grounds for the motion, arguing that the QDRO did not accurately reflect the language in the separation agreement. In denying appellant's motion, the trial court determined that it was not filed within one year of the judgment as required under Civ.R. 60(B)(1), (2), or (3) and was not filed within a reasonable time for sections (4) or (5). The court further determined that since the QDRO language accurately reflected the language employed in the agreement, appellant had not put forth a meritorious defense or claim.
 {¶ 8} Appellant now appeals from that judgment, setting forth the following sole assignment of error:
 {¶ 9} "The court below erred by denying the defendant/appellant's motion on the grounds that the requested relief did not meet the requirements of Civ.R. 60(B)(5)."
 {¶ 10} A successful motion for relief from judgment requires 1) the existence of a meritorious defense; 2) that the movant is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and 3) that the motion is timely brought.GTE Automatic Elect. v. ARC Indus. (1976), 47 Ohio St.2d 146, paragraph two of the syllabus. If any of these three requirements is not met, the motion should be overruled. Rose Chevrolet, Inc.v. Adams (1988), 36 Ohio St.3d 17, 20; GTE, supra, at 151. The decision to grant or deny a motion for relief from judgment is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Griffey v. Rajan
(1987), 33 Ohio St.3d 75, 77. An abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 11} We initially note that appellant's grounds for relief was that a mistake was made in the QDRO, resulting in an error of calculation. Since this ground squarely qualifies as a "mistake, inadvertence, surprise or excusable neglect," Civ.R. 60(B)(1) requires that the motion be filed "not more than one year after the judgment, order or proceeding as entered or taken." Even though not alleged by appellant, Civ.R. (B)(2), "newly discovered evidence" and (3), "fraud," also must be filed within the one year limit.
 {¶ 12} In this case, appellant did not file his motion for relief from judgment until almost three years after the original QDRO was filed with the court. Thus, appellant may not obtain relief under Civ.R. (B)(1), (2) or (3).
 {¶ 13} Under the two remaining sections of Civ.R. 60(B), although the one-year filing time limitation does not apply, the motion must be made within a "reasonable time." Civ.R. (B)(4), satisfaction of judgment, is not applicable to the facts in this case. The remaining section, Civ.R.60(B)(5), which includes "any other reason justifying relief from the judgment," is intended to be a "catch-all" provision and reflects the inherent power of a court to relieve a person from the unjust operation of a judgment. However, the grounds for invoking this provision should be substantial. Staff Note to Civ.R. 60(B); Caruso-Ciresi, Inc.v. Lohman (1983), 5 Ohio St.3d 64, paragraph two of the syllabus; Adomeit v. Baltimore (1974), 39 Ohio App.2d 97, 105. Moreover, Civ.R. 60(B)(5) may not be used as a substitute for any of the other more specific provisions of Civ.R. 60(B).Caruso-Ciresi, supra, at paragraph one of the syllabus;Adomeit, supra; Antonopoulos v. Eisner (1972),30 Ohio App.2d 187, 193. A court may not grant a motion based on Civ.R. 60(B)(5) when that motion was considered and properly overruled on Civ.R. 60(B)(1) grounds. Caruso-Ciresi, Inc., supra, at paragraph three of the syllabus.
 {¶ 14} In this case, Civ.R. 60(B)(5) is inapplicable since appellant's motion was properly considered under Civ.R. 60(B)(1), mistake, inadvertence, and excusable neglect. Therefore, the trial court did not abuse its discretion in determining that appellant did not file a timely motion. This determination alone is sufficient to support the trial court's denial of appellant's motion for relief from judgment.
 {¶ 15} Nonetheless, the trial court also determined that appellant had not established a meritorious claim or defense. Appellant claims that the QDRO mistakenly used a fractional method to calculate appellee's amount based upon appellant's current benefit after 26 years in the pension fund. Instead, appellant argues that the QDRO should be changed to reflect that the calculation should be based upon the benefit he would have received had he retired with only 22 years of service. Appellant's argument is without merit.
 {¶ 16} As we recently noted, pursuant to R.C. 3105.65, a domestic relations court may enforce a decree of dissolution and where there is confusion over the interpretation of a particular clause, the trial court may clarify the confusion and resolve the dispute. Yarder v. Scherer, 6th Dist. No. L-03-1035, 2003-Ohio-6744, citing to In re Dissolution of Marriage ofSeders (1987), 42 Ohio App.3d 155, 157; Quisenberry v.Quisenberry (1993), 91 Ohio App.3d 341, 348. When construing the terms of the written dissolution agreement, the court will presume the parties' intent resides in the language employed. SeeKelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Thus, a court will give common words appearing in a written instrument their ordinary meaning, unless manifest absurdity results or unless some other meaning is clearly evidenced from the instrument. See Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 17} In this case, the QDRO was signed by the attorneys for both parties, indicating the parties' agreement with it. The language employed by the parties in both the QDRO and the separation agreement indicates an intent to give appellee a portion of appellant's pension equal to one-half of the amount attributable to 22 years of appellant's pension. Had appellant actually started drawing his pension or stopped contributing to the plan at 22 years of service, we might agree that appellee was entitled to only half of that amount, whatever it might have been.[1]
 {¶ 18} Appellee's distribution of her marital portion, however, was deferred until such time as appellant actually began drawing his pension. Appellant reaped the benefit of this deferral in two ways. First, his total benefits increased in value not only due to appellant's additional contribution, but also because appellee's portion of his retirement remained intact. In addition, appellant was saved the expense of having to pay appellee her projected share of his retirement at the time of the divorce. As a result, to now give appellee an amount calculated on a speculative benefit payable at 22 years, while having permitted appellant to keep appellee's share for the intervening four years, would deprive appellee of the investment opportunities and income she might have gained had she been given her marital share in 1999. By agreeing to defer receipt of her marital portion of appellant's pension, appellee is entitled to reap the benefit of that deferral.
 {¶ 19} While we agree that one clause in the separation agreement purports to limit appellee's share to whatever appellant would have received had he left his job at 22 years, we cannot agree that the parties intended appellee's share to be later calculated without consideration of the deferral consequences. The fact that appellant did not leave employment after 22 years, but continued in the pension program makes the original language no longer applicable. Furthermore, the value of appellant's pension at the time the parties executed the separation agreement in September 1999 could have been ascertained at the time of the divorce and included in the final judgment entry as well as the QDRO. Instead, the parties chose to defer compensation and employed a formula which does, in fact, include the increase in value of the entire pension including appellee's portion. Thus, we agree with the trial court that the October 30, 2000 QDRO correctly and fairly incorporates the terms of the separation agreement, and that appellant did not establish a meritorious defense or claim .
 {¶ 20} Therefore, we cannot say that the trial court abused its discretion in denying appellant's Civ.R. 60(B) motion for relief from judgment. Accordingly, appellant's sole assignment of error is not well-taken.
 {¶ 21} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Knepper, J., Lanzinger, J., Singer, J., concur.
[1] The actual amount of Peppas' share currently being paid was never officially provided in the record to the trial court. Appellant simply alleged that the amount being taken out should have been one-half of $750 per month and the "error" was costing him "approximately $600.00 per month."