[Cite as *Head v. Head*, 2018-Ohio-1236.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Rebecca S. Head

    Appellee

v.

John C. Head, Sr.

    Appellant

Court of Appeals No. WD-17-030

Trial Court No. 2002DS0122

**DECISION AND JUDGMENT**

Decided: March 30, 2018

* * * * *

Jeffrey B. Johnston, for appellee.

Jeffrey D. Levy and Chelsea L. Meister, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Defendant-appellant, John C. Head ("John"), appeals the April 25, 2017 judgment of the Wood County Court of Common Pleas, Domestic Relations Division, in favor of plaintiff-appellee, Rebecca S. Head ("Rebecca"). For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} John Head and Rebecca Head were married on February 9, 1970. On August 9, 2002, they filed a petition for dissolution together with a separation agreement. Their marriage was dissolved on October 3, 2002, and the court approved the separation agreement as part of the decree of dissolution.

{¶ 3} John was employed by the state and participated in the Ohio Public Employees Retirement System ("OPERS") beginning July 22, 1985. Before that, from 1978-1985, John held employment pursuant to which he contributed to the School Employee Retirement System ("SERS"). Credit for those seven years of service was transferrable to OPERS.

{¶ 4} The separation agreement provided that Rebecca would receive half of John's OPERS retirement benefit accumulated during their marriage, payable to Rebecca when John retires:

> E. Husband currently has a PERS retirement account due to his state employment, all of which occurred during the parties' marriage. Wife shall be entitled to one-half of said benefits accumulated during the term of marriage, and which shall not be payable to Wife until Husband retires. In the event Husband shall die before receiving his retirement benefits, Wife's claim to her share shall be considered to be a claim on her Husband's estate.

{¶ 5} Under R.C. 3105.80 et seq., the state requires that a division of property order ("DOPO") be completed and filed with OPERS to put it on notice that there is a

2.

claim to a portion of a participant's benefits. This was not done when the parties' dissolution decree was finalized, so in 2016, Rebecca hired attorney William Kimmelman to draft and file a DOPO. Kimmelman needed additional personal and employment information from John to complete the DOPO. John neglected to respond to requests for information, forcing Rebecca to seek court intervention.

{¶ 6} On August 10, 2016, Rebecca filed a motion to compel disclosure of information to enforce the judgment entry of dissolution. The magistrate issued an order requiring John to complete an authorization for release of information to enable Kimmelman to prepare the DOPO. It also ordered John to cooperate in providing any other information necessary to its preparation. The matter was scheduled for a hearing on January 5, 2017.

{¶ 7} Rebecca submitted a prehearing memorandum on January 4, 2017. She alleged in her memorandum that John had been accepting disability benefits in lieu of retirement. Rebecca attached to her brief a letter received from OPERS dated September 27, 2016, and the DOPO prepared by Kimmelman.

{¶ 8} According to the letter from OPERS, John contributed to OPERS from July 22, 1985, through August 30, 2008, and earned a total of 22.833 years of contributing service. He contributed to SERS from 1978 to 1985, transferring seven years of credit to OPERS. John began receiving a "joint original plan disability benefit" from OPERS on May 1, 2008, under R.C. 145.36, based on 29.833 years of contributing service. From this information, Kimmelman prepared a DOPO specifying that Rebecca is entitled to age and service retirement benefits *and* disability monthly benefits.

3.

**{¶ 9}** In her prehearing memorandum, Rebecca briefly explained what is meant by "original plan disability benefit," which can be better understood when read in conjunction with R.C. 145.35, 145.36, and 145.361. R.C. 145.35 explains that persons who were members of OPERS on July 29, 1992, were given the opportunity to elect disability coverage either under R.C. 145.36 (referred to as the "original plan") or 145.361 (referred to as the "revised plan"). Members who failed to timely file a valid election were considered to have elected disability coverage under R.C. 145.36. Once made, elections were irrevocable. The September 27, 2016 letter from OPERS makes clear that whether by deliberate election or by default, John's disability coverage was governed by R.C. 145.36.

**{¶ 10}** One of the major differences between the disability coverage described in R.C. 145.36 versus 145.361 is that a disability benefit paid under R.C. 145.361—referred to as a "disability allowance"— terminates as of the effective date of age and service retirement.[1] This termination provision is not applicable to a disability benefit paid under R.C. 145.36—referred to as "disability retirement."

**{¶ 11}** There is no indication from the court's docket entries that John ever filed a response to Rebecca's prehearing memorandum. The parties did, however, file stipulations of fact, agreeing to the admission of the September 27, 2016 OPERS letter, and stipulating that John "continues to receive the monthly joint original plan disability benefit," referenced in the OPERS letter. There is no hearing transcript in the record, and

---

[1] R.C. 145.361(C)(2) and (3) describe additional events that trigger termination of a disability allowance.

4.

it appears that Rebecca and John presented no other testimony, evidence, or argument beyond Rebecca's prehearing brief, the OPERS letter, the draft DOPO, and the January 13, 2017 stipulations of fact.

{¶ 12} On February 2, 2017, the magistrate issued a decision approving Rebecca's proposed DOPO and setting forth the following factual findings:

1. The Judgment Entry stated that Wife was to receive her half of the marital portion of Husband's retirement and that it was not payable until Husband retires.

2. In 2008, Husband began receiving disability benefits from OPERS based on 29.833 years of contributing service. At that time Husband was age 55.

3. Husband continues to receive the disability payments and he is now age 64.

4. Husband was eligible to retire at age 55 based on his age and years of service. Husband continues to be eligible for retirement based on age and service.

5. Pursuant to the original disability plan under OPERS, Husband could continue to receive disability benefits and not elect to receive his retirement benefits. By doing that, he would defeat Wife's interest in the marital portion of Husband's retirement asset that was awarded to her. Clearly that is inequitable and not what was intended under the Separation Agreement.

6. Pursuant to case law, including Mueller vs. Mueller, 2005-Ohio-5915, 2005 Ohio App. LEXIS, 5341, [sic] the disability benefits accepted in place of retirement pay is marital property to the extent the disability benefit includes the retirement pay.

7. Therefore, since Husband meets the age and service requirements for retirement, his disability benefits include the retirement benefits that are required to be paid to his former Wife under the DOPO that was to follow the Judgment Entry.

{¶ 13} John filed objections to the magistrate's decision. In his first objection, he claimed that contrary to the magistrate's findings, his plan election was irrevocable, therefore, he did not have the option of either remaining on disability or choosing typical retirement benefits.

{¶ 14} In his second objection, he argued that his disability benefit could end if either (1) his disability improves to the point that he can return to his previous employment, or (2) a position is found that he is able to perform.

{¶ 15} In his third objection, he contended that the DOPO is not consistent with the parties' agreement, which provided that Rebecca was entitled to retirement benefits when John *retires.*

{¶ 16} And in his fourth objection, he claimed that the magistrate's reliance on *Mueller v. Mueller,* 2d Dist. Montgomery No. 20847, 2005-Ohio-5915, was misplaced because in *Mueller,* "the benefit recipient was retired, and the question to be determined

6.

was at what age would the recipient fulfill the age requirements for PERS pension benefits as opposed to the recipient's disability benefits."

{¶ 17} The trial court overruled John's objections and adopted the magistrate's decision, except that it clarified that "Rebecca is entitled to a 50/50 split of either disability retirement or retirement benefits that accrued through the date of the divorce." It gave the parties additional time to submit supplemental briefs addressing whether changes needed to be made to the DOPO relative to this point.

{¶ 18} In a supplemental brief, John essentially reiterated his position that the DOPO does not reflect the parties' agreement, but he asked that in the event the decision is upheld, that the matter be returned to the magistrate for determination of any offset to Rebecca's entitlement to benefits based on her receipt of social security or other retirement benefits. Rebecca pointed out in her supplemental brief that John's attorney drafted their dissolution documents and failed to submit a DOPO at the time their dissolution was finalized. She submitted that the trial court's judgment was correct, and she maintained that there were no changes that needed to be made to the proposed DOPO drafted by Kimmelman.

{¶ 19} On April 25, 2017, the trial court issued an order in favor of Rebecca, and it entered the DOPO on the same date. John appealed and assigns the following errors for our review:

      A.  THE TRIAL COURT ERRED AS A MATTER OF LAW BY MODIFYING THE TERMS OF A PROPERTY SETTLEMENT

7.

PROVISION CONTAINED IN THE JUDGMENT ENTRY OF DISSOLUTION OF MARRIAGE[.]

B. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT APPELLANT'S DISABILITY BENEFITS ARE OR INCLUDE AGE AND SERVICE RETIREMENT BENEFITS[.]

## II. Law and Analysis

{¶ 20} In his first assignment of error, John claims that there are no ambiguous terms in the separation agreement requiring the court's interpretation. He argues that the trial court did not have jurisdiction to modify the parties' asset distribution agreement, and by adopting the DOPO, the court effectively did just that. He maintains that the separation agreement entitled Rebecca to 50 percent of his *retirement* benefit—not his disability benefit—payable when he retires. He insists that he did not *retire*—he is receiving disability for job-related injuries.

{¶ 21} In his second assignment of error, John claims that disability retirement benefits are income, rather than marital assets subject to division of property. He claims that although he has a sufficient number of service years to qualify for retirement, he is receiving disability for an injury that rendered him unable to work. Those benefits, he insists, are a continuation of his wages not subject to division.

{¶ 22} John also argues that the trial court's finding that he was eligible to retire does not mean that he should be considered to have retired. He insists that his intent was to maximize his retirement benefits and to continue his profession as long as he was able. He claims that because he receives disability, workers' compensation compensates him

8.

for medical care, medications, and costs related to work injuries, and if he elected to receive retirement benefits, he would no longer be able to afford medical care and would have to pay for health insurance himself. John also maintains that his disability benefits are subject to termination if his disability improves, or if a position becomes available that he is able to perform.

{¶ 23} Rebecca contends that where the parties in good faith dispute the provision in a decree or where a provision is ambiguous, the court has power to hear the matter, resolve the dispute, and enforce the decree. She argues that given John's unanticipated disability, ambiguity remained in the agreement concerning her entitlement to one-half of John's OPERS benefits, and John's failure to file a DOPO prevented clarification of how the OPERS asset would be divided where it was paid in the form of a disability benefit instead of an age and service retirement benefit. Rebecca accuses John of purposely retaining the ongoing OPERS disability benefit instead of filing for the age and service retirement benefit in order to avoid compliance with the 2002 property distribution order. She claims that several courts have found this behavior improper.

{¶ 24} Rebecca also points out that the parties appeared before the court on January 5, 2017, and agreed to submit the matter for decision pending the parties' filing of stipulations of fact. Beyond this, she says, John chose not to introduce any additional evidence, either at hearing or as part of the stipulations. She argues that while John asserts in his brief various reasons why he chose not to receive retirement benefits, "statements of this type appear to be an attempt by appellate counsel to substitute

9.

conjecture for trial counsel's failure to provide testimony by Mr. Head regarding his motivation at any hearing that was scheduled by the trial court prior to issuance of the Magistrate's order dated February 2, 2017."

### A. The court had power to clarify confusion in the separation agreement.

{¶ 25} "While a trial court does not have continuing jurisdiction to modify or amend a marital property division incident to a divorce or dissolution decree, it has the power to clarify and construe its original property division so as to effectuate its judgment." *Yarder v. Scherer*, 6th Dist. Lucas No. L-03-1035, 2003-Ohio-6744, ¶ 13. "Where there is confusion over the interpretation to be given to a particular clause, the trial court in enforcing the agreement has the power to hear the matter, clarify the confusion, and resolve the dispute." *In re Dissolution of Marriage of Seders,* 42 Ohio App.3d 155, 156-157, 536 N.E.2d 1190 (9th Dist.1987).

{¶ 26} The standard of review of a trial court's interpretation of a dissolution agreement depends upon whether the language is ambiguous. *Yarder* at ¶ 16. Whether there exists an ambiguity is a question of law to be reviewed de novo. *Id.* at ¶ 17. The trial court's resolution of the ambiguity in an agreement, however, is a question of fact to be reviewed for an abuse of discretion. *Id.* An abuse of discretion implies that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 27} "In interpreting a divorce decree that incorporates the parties' separation agreement, the normal rules of contract interpretation generally apply to ascertain the meaning of any ambiguous language." *Id.* at ¶ 15. A court will give common words

10.

their ordinary meaning, unless manifest absurdity results or unless some other meaning is clearly evidenced from the instrument. *Id.* The principal goal is to effectuate the intent of the parties, however, the court may also consider the equities involved. *Id; In re Marriage of Seders* at 156.

{¶ 28} Here, the parties' separation agreement indicates that John has an OPERS retirement account and that Rebecca is entitled to one-half of the benefits accumulated during their marriage to be paid when John retires. While the agreement references retirement, generally, the relevant statutes define two types of "retirement" potentially applicable here: (1) "disability retirement" under R.C. 145.36, and (2) "age and service retirement" under R.C. 145.32. R.C. 145.01(N)(1) and (O). To the extent that the separation agreement does not differentiate between the two, and to the extent that case law recognizes that there may come a point where one may be said to have accepted disability benefits in lieu of retirement benefits, we find it to be ambiguous. It was, therefore, appropriate for the trial court to interpret the agreement to resolve the ambiguity.

{¶ 29} Accordingly, we find John's first assignment of error not well-taken.

### B. John failed to present evidence in the trial court.

{¶ 30} The general rule is that pension or retirement benefits are marital assets, while disability benefits are separate property. *Gallitto v. Levinsky*, 7th Dist. Mahoning No. 16 MA 0157, 2017-Ohio-5715, ¶ 10. "The exception to this general rule is when disability benefits are accepted in lieu of age and service benefits; in that situation, they

are marital property to the extent that the retirement pay value is included in the disability pension benefit." (Internal citations and quotations omitted.) *Id.*

{¶ 31} Here, the magistrate found that "since Husband meets the age and service requirements for retirement, his disability benefits include the retirement benefits that are required to be paid to his former Wife under the DOPO that was to follow the Judgment Entry." The magistrate premised this finding on *Mueller,* 2d Dist. Montgomery No. 20847, 2005-Ohio-5915, where the Second District found that the trial court appropriately (1) recognized that the participant-husband's current disability benefit constituted income replacement not subject to division; (2) determined that husband was not yet eligible for retirement benefits; and (3) remanded the matter to the magistrate to determine the date of husband's eligibility for PERS benefits. The Second District held that husband's benefit would properly be subject to division and payment upon fulfilling the age requirement for PERS pension benefits.

{¶ 32} Under Civ.R. 53(B)(3)(b)(i), John was permitted to file objections to the magistrate's findings, but Civ.R. 53(B)(3)(b)(iii) required that his objections be "supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Where no transcript is provided, the trial court must accept the magistrate's findings of facts, and can examine only the legal conclusions based on those facts. *Beaverson v. Beaverson*, 6th Dist. Wood No. WD-06-080, 2007-Ohio-3560, ¶ 3.

{¶ 33} John argues on appeal that he had no intention of retiring upon his earliest eligibility. He explains his rationale for accepting disability benefits and offers insight

12.

into what his intentions were with respect to continued employment. However, as Rebecca points out, this information was not presented at any hearing in the trial court. John offered no testimony, presented no documents, submitted no affidavit, and provided no evidence to dispute Rebecca's contention that he was accepting disability benefits in lieu of retirement pay. The trial court recognized as much in its March 16, 2017 order, where it oberved that "[t]he only facts were the Judgment Entry of Divorce filed October 3, 2002 and stipulations of fact filed January 13, 2017."

{¶ 34} John also never sought leave to introduce additional evidence on objections as permitted by Civ.R. 53(E)(4)(b). He did, however, attach to his objections an OPERS disability benefits handbook, which the court reviewed and cited in overruling John's objections, despite acknowledging that the handbook was not a part of the record. The information in the handbook had no bearing on the factual issue of whether John had accepted disability retirement benefits in lieu of age and retirement benefits.

{¶ 35} "When a party objecting to a magistrate's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the report, appellate review of the court's findings 'will be limited to whether the trial court's adoption of [the findings] constituted an abuse of discretion.'" *Dancy v. Dancy*, 8th Dist. Cuyahoga No. 82580, 2004-Ohio-470, ¶ 10, quoting *Proctor v. Proctor*, 48 Ohio App.3d 55, 63, 548 N.E.2d 287 (3d Dist.1988). Here, we find that in the proceedings before the magistrate, John failed to present any evidence pertinent to whether he accepted disability retirement benefits in lieu of age and service retirement benefits. He also failed to seek leave to offer such additional evidence in support of his

13.

objections to the magistrate's findings. Thus, there was no evidence from which the court could make findings independent of those made by the magistrate.

{¶ 36} Moreover, although John makes factual assertions on appeal relative to his intent to continue working and his reasons for accepting disability retirement, this evidence does not exist in the trial court record, and we are unable to consider it. Accordingly, we find that the trial court did not abuse its discretion in overruling John's objections and adopting the magistrate's decision.

{¶ 37} We, therefore, find John's second assignment of error not well-taken.

### III. Conclusion

{¶ 38} We find John's two assignments of error not well-taken. We affirm the April 25, 2017 judgment of the Wood County Court of Common Pleas, Domestic Relations Division. The costs of this appeal are assessed to John under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

Thomas J. Osowik, J. _____

James D. Jensen, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE