[Cite as *Slak v. Strozier*, 2024-Ohio-286.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Hewen Slak                                          Court of Appeals No.  L-23-1074

      Appellant                               Trial Court No.  CVG-22-16132

v.

Shareen Strozier                                **DECISION AND JUDGMENT**

      Appellee                                Decided:  January 26, 2024

* * * * *

Douglas A. Wilkins, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** In this forcible entry and detainer action, appellant, Hewen Slak, appeals the March 3, 2023 judgment of the Toledo Municipal Court overruling her objections to the December 27, 2022 magistrate's decision that granted a judgment for possession to appellee, Shareen Strozier.  For the following reasons, we affirm.

## I. Background and Facts

{¶ 2} In 2018, Slak, as landlord, and Strozier, as tenant, entered into a lease agreement for a house in Toledo. The term of the lease was from August 1, 2018, to February 28, 2022. Under the lease, Strozier agreed to pay Slak $650 per month in rent and a "water fee" of $100.

{¶ 3} On January 1, 2020, the parties signed a second document, titled "TCC Lease with option to purchase plan" ("2020 document").[1] The document says, in its entirety:

**TCC Lease with option to purchase plan**[2]

Site:   1208 Parkside, Toledo OH 43607
         3 BR/1 Bath, 1212 sq ft

| | |
|---|---|
| Sales Price: $25,000 | Late fee: $5 /day |
| Monthly Rent: $650 | |
| Real Estate Taxes: $327/half year | Hazard Insurance: $400/year |
| Paid by Lessee | Paid by Lessor |

The $2000.00 Non-Refundable Option Consideration Fee (NROCF) will be paid up front as the security deposit, Lessee will then be able to apply that NROCF in this Lease with Option To Purchase plan utilizing the Non-refundable Option Consideration Fee (NROCF) of $2,000.00*

---

[1] Slak attached a "TCC Lease with option to purchase plan" signed in March 2021 to her brief. This is not the same "TCC Lease with option to purchase plan" admitted into evidence by the trial court, which was signed in 2020, nor is there any evidence that the 2021 version was ever presented to the trial court. Because the 2021 document was not properly filed with, admitted into evidence by, or proffered to the trial court, it is not part of the record before us, and we cannot consider it. *Salpietro v. Salpietro*, 2023-Ohio-169, 205 N.E.3d 1203, ¶ 10 (6th Dist.) ("An exhibit attached to a party's appellate brief—but not filed with the trial court—is not part of the record.").

[2] All formatting, emphasis, and errors are in the original document.

No pre-payment penalty applies, therefore optional accelerated pay-off/transfer of deed, may be exercised. Hazard Insurance will be paid by Lessor/ Optionor/ Seller (L/O/S). Lessee will then be able to apply that NROCF in this lease with.

For simplicity and to ensure that maximum payment credit is earned, it is suggested that Lessee have all payments automatically transferred to L/O/S's checking account to avoid any chance late payments.

**Schedule of On-Time Payments & Credits.**
**12-month illustration below assumes all monthly payments are received On-Time.**
**On-Time payment credit will not be granted for payments after 5-day grace period.**

**Schedule of Payments & Credits:**
**12-month illustration below assumes all monthly payments are received.**

| Year | Credit, 30% | Months | Payment Credit/Year |
|------|------------|--------|---------------------|
| 2020 | $195.0 | 12 | $2,340 |
| 2021 | $195.0 | 12 | $2,340 |
| 2022 | $195.0 | 12 | $2,340 |
| 2023 | $195.0 | 12 | $2,340 |
| 2024 | $195.0 | 12 | $2,340 |
| 2025 | $195.0 | 12 | $2,340 |
| 2026 | $195.0 | 12 | $2,340 |
| 2027 | $195.0 | 12 | $2,340 |
| 2028 | $195.0 | 12 | $2,340 |

| | |
|---|---|
| Total credit | $21,060 |
| Faith Money | 2,000 |
| Balance due to close | 1,940 |
| | 25,000 |

The 2020 document does not indicate whether it is intended to supplement or replace the

2018 lease.

3.

**{¶ 4}** Slak and Strozier did not enter into another lease agreement when the 2018 lease expired in February 2022.

**{¶ 5}** On October 31, 2022, Slak served Strozier with a notice of "[t]ermination of month-to-month tenancy" in which she told Strozier that her tenancy would terminate on November 30, 2022. On December 5, 2022, Slak served Strozier with a three-day notice to leave the premises, as required by R.C. 1923.04. In the three-day notice, Slak listed "TERMINATION OF LEASE" as the reason she was asking Strozier to leave the house. When Strozier did not leave, Slak filed the underlying eviction action.

**{¶ 6}** At the December 2022 eviction hearing before the magistrate, Slak and Strozier each testified. Slak said that she and Strozier signed the 2020 document, which she characterized as an option to purchase the property during the term of the 2018 lease. Slak drafted the 2020 document. According to Slak, Strozier could only exercise the purchase option if she was current in her rent payments. The schedule at the bottom of the 2020 document showed that Strozier could receive a credit toward the purchase price if she paid her rent on time, and would lose any credit if her rent was late. At the time of the hearing, Strozier had not exercised her option, and Slak thought that Strozier could not exercise the option because she owed Slak money.

**{¶ 7}** Slak also testified about a spreadsheet, dated more than three months before the hearing, that she compiled regarding Strozier's rent and tax payments. Based on her records, Slak believed that Strozier owed her approximately $3,500 to cover back rent,

4.

late fees, and unpaid property taxes from January 2020 to mid-September 2022.[3] The spreadsheet showed that Strozier would frequently not pay $650 for rent each month. Some months she paid nothing, some months she paid less than $650, and some months she paid more. Slak said that the amount she claimed that Strozier owed was the "net due delinquent" amount after accounting for all payments made by Strozier or on her behalf.

{¶ 8} Slak asked for a judgment for possession of the property because Strozier's month-to-month tenancy was properly terminated.

{¶ 9} In her testimony, Strozier claimed that Slak's records were inaccurate and her rent was paid in full. She believed that Slak was "looking at somebody else's information * * *" and said that she had proof of her payments to Slak. She also said that she had provided Slak proof of her payments when Slak asked for it. Despite Strozier saying, "I have proof of all payments right here in front of me[,]" her attorney did not ask her about any specific payments or attempt to enter any documents into evidence.

{¶ 10} Regarding the 2020 document, Strozier thought that the option to purchase plan was still in effect and that she was in compliance with the document's terms. She said that Slak "promised [her] to buy" the house and believed that she "only owe[d] $11,700 on that house * * *."

---

[3] Based on notes on Slak's rent ledger and some of Strozier's testimony, it seems that Slak filed an eviction case against Strozier earlier in 2022 for nonpayment of rent, but dismissed that case after giving Strozier notice of terminating her month-to-month tenancy.

5.

{¶ 11} In his decision, the magistrate marked the check box next to "Defendant in default under (written) (oral) lease since _____[,]" but did not specify what type of lease or list a date of default.  The magistrate also indicated that the notice to vacate was lawfully served.  Under the section for the magistrate's findings, he wrote down details of the parties' arguments, but did not make any factual findings.  Finally, the magistrate marked the check box indicating that a judgment for possession be entered in Strozier's favor.  The trial court's entry adopting the magistrate's decision simply said, "[t]he Magistrate's decision of December 27, 2022 is hereby adopted[,]" and granted Strozier a judgment for possession.

{¶ 12} Slak filed objections to the magistrate's decision.  She argued that the magistrate erred by entering judgment in Strozier's favor by (1) finding that the option to purchase remained in effect, which prevented Slak from seeking a judgment for possession; (2) ignoring Slak's spreadsheet showing that Strozier owed her money; and (3) not granting her possession despite her properly terminating Strozier's month-to-month tenancy.

{¶ 13} In her response, Strozier argued that Slak wrongfully terminated a lease that was "entwined with" the option to purchase because the option should remain open "until the normal provided time of paying the leasehold agreement expires * * *" so that Strozier could have the opportunity to exercise her option.

6.

{¶ 14} In its judgment entry overruling Slak's objections, the trial court found that the 2020 document was ambiguous because the parties signed it before the 2018 lease expired and did not sign another lease after the 2018 lease expired, it referred to monthly rent payments of $650, it included new obligations for Strozier (including paying a $2,000 security deposit and paying the property taxes), and the "schedule of payments and credits shows that the agreement could be binding from the date of signing up until sometime in the year 2028." Because the agreement was ambiguous, the court construed it against Slak, the drafter, and found that it was "a monthly lease lasting until 2028, unless [Strozier] should not be current on payments."

{¶ 15} Regarding the parties' conflicting testimony about Strozier's rent payments, the court explained that the evidence before it consisted of Slak's exhibits from the hearing, no exhibits from Strozier, and "less than twelve brief pages of recorded testimony transcribed from the hearing." Although the court noted that it had to conduct an independent review of the magistrate's decision, it also said that it was allowed to rely on the magistrate's credibility determinations because the magistrate saw the witnesses testify. Based on the "limited evidence" before it—that is, "[w]ith no evidence being entered at all by [Strozier], and [Slak's] sworn word only supported by a document drafted by [Slak] herself * * *"—the trial court determined that the magistrate's credibility determinations were necessary to resolve whether Strozier was current with

7.

her rent. The court concluded that "it appear[ed] that the magistrate gave greater credibility to [Strozier's] testimony, * * *" which the court accepted.

{¶ 16} Based on that information, the trial court concluded that "[Slak] did enter into an agreement which was an ambiguous and somewhat open-ended Lease with Option to Purchase and that [Slak] is now bound to the terms of the agreement." The court found Slak's objections not well-taken.

{¶ 17} Slak now appeals, raising one assignment of error:

The Lower Court Erred As a Matter of Law in Failing to Grant Slak Judgment for Possession[.]

## II. Law and Analysis

{¶ 18} In her assignment of error, Slak argues that the trial court incorrectly found that the 2020 document extended the term of Strozier's lease. She contends that an unexercised option does not prevent a landlord from terminating a month-to-month tenancy or seeking to evict a tenant after a lease is terminated or breached; that is, she claims that Strozier's option did not affect the 2018 lease or change Strozier's status as a month-to-month tenant after the 2018 lease expired. Slak also contends that she followed the steps necessary to evict an at-will tenant, and Strozier's payment of rent was "immaterial" to the outcome of the eviction action. She also points out the trial court's "incongruous" findings that the 2020 document made Strozier a month-to-month tenant until 2028, but that Slak can only evict Strozier for failing to pay rent.

8.

## A. Standard of review

{¶ 19} Generally, we review a trial court's decision on objections to a magistrate's decision only for an abuse of discretion. *Baker v. R/A Cab Co.*, 6th Dist. Lucas No. L-19-1031, 2019-Ohio-4375, ¶ 10. "However, even if a case was initially heard by a magistrate, the appropriate standard of review in a contract case is whether the trial court erred as a matter of law." *Gray v. Nunez*, 6th Dist. Lucas No. L-08-1276, 2009-Ohio-989, ¶ 23.

{¶ 20} A lease is a contract, and, like any other contract, it must be construed to carry out the intent of the parties. *Tillimon v. Jankowski*, 6th Dist. Lucas No. L-91-262, 1992 WL 114606, *2 (May 29, 1992). We presume the parties' intent is reflected in the plain language of the lease. *Id.*; *Beverage Holdings, LLC v. 5701 Lombardo, LLC*, 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 13. If the contract language is clear and unambiguous, a court must enforce the terms as written, without turning to evidence beyond the four corners of the agreement. *Beverage Holdings* at ¶ 13. In that case, construing the document is a matter of law that we review de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995). Similarly, the question of whether an ambiguity exists is a question of law that we review de novo. *Yarder v. Scherer,* 6th Dist. Lucas No. L-03-1035, 2003-Ohio-6744, ¶ 17.

{¶ 21} However, if a contract is ambiguous, its interpretation is a question of fact, which we review for an abuse of discretion. *Id.* Abuse of discretion means that the trial

9.

court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). We will not substitute our judgment for the trial court's regarding findings of fact that are supported by some competent, credible evidence in the record. *Ozdemir v. Boldt*, 6th Dist. Lucas No. L-18-1022, 2018-Ohio-5008, ¶ 17, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**B. The legal import of the 2020 document controls the resolution of this case.**

{¶ 22} This case is a forcible entry and detainer action, which is "solely a possessory action." *Haas v. Gerski*, 175 Ohio St. 327, 330, 194 N.E.2d 765 (1963). That is, it is only used to determine which party has the right to present possession of the property. *Eckart v. Newman*, 6th Dist. Williams No. WM-18-006, 2019-Ohio-3211, ¶ 9. Thus, the ultimate issue in this case is whether Strozier or Slak had the right to present possession of the house. Slak argues that she has the right to possess the property because Strozier was occupying the house as a holdover tenant after the 2018 lease expired, and she properly terminated her holdover tenancy.

{¶ 23} When a tenant whose lease has expired continues to possess the leased property, the tenant becomes a holdover tenant. *Kazmaier v. Fat Jacks, LLC*, 6th Dist. Wood Nos. WD-09-048 and WD-09-057, 2010-Ohio-3627, ¶ 18. When a tenant holds over, the landlord has the option to either treat the tenant as a trespasser or hold her to a new lease term. *Steiner v. Minkowski*, 72 Ohio App.3d 754, 762, 596 N.E.2d 492 (6th

10.

Dist.1991), citing *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.*, 38 Ohio App.3d 79, 81, 526 N.E.2d 321 (10th Dist.1987). If the holdover tenant continues to pay rent per the lease terms, and the landlord accepts the rent, the law implies a contract for a new lease term. *Craig Wrecking* at 81. Unless the parties agree otherwise, the new, implied lease term is governed by the same terms as the original lease. *Id.* When the original lease called for payment of monthly rent, the holdover term is for a month-to-month periodic tenancy. *Kazmaier* at ¶ 18, citing *Cesta v. Manfredi*, 101 Ohio App.3d 326, 329, 655 N.E.2d 755 (11th Dist.1995). A month-to-month tenancy can be terminated by either party giving the other at least 30 days' notice. R.C. 5321.17(B).

{¶ 24} Here, the evidence shows that Strozier continued to reside in the house beyond February 2022, when the 2018 lease would have expired, and Slak continued to accept rent from Strozier. If the parties had not entered a separate agreement in 2020—during the term of the 2018 lease—our analysis would be complete; no one disputes that Slak gave Strozier 30 days' notice before filing the underlying forcible entry and detainer action, which would be sufficient to terminate a holdover tenancy. Instead, we must analyze the 2020 document to determine what impact, if any, it had on the parties' obligations—which depends upon whether it is an option contract, as Slak argues, or a new lease, as the trial court concluded.

{¶ 25} An option contract is an agreement in which the owner of property grants another person the privilege, without the obligation, to purchase the property at a set price

11.

and within a set time. *Wolf v. Miller Diversified Consulting, LLC*, 6th Dist. Wood No. WD-07-049, 2008-Ohio-1233, ¶ 22. It consists of an offer to buy, sell, or perform (which becomes a contract if the offeree properly accepts it), combined with a binding agreement to leave the offer open for a specific period of time. *Shrock v. Spognardi*, 2015-Ohio-4555, 46 N.E.3d 1115, ¶ 18 (5th Dist.), citing *Cent. Funding, Inc. v. CompuServe Interactive Servs., Inc.,* 10th Dist. Franklin No. 02AP-972, 2003-Ohio-5037, ¶ 38.

{¶ 26} A lease is an agreement that conveys a right to possess real property for a limited term, under specified conditions, and in consideration of rent. *Id.* at ¶ 15, citing *Eller Media Co. v. DGE, Ltd.,* 8th Dist. Cuyahoga Nos. 83273 and 83286, 2004-Ohio-4748, ¶ 35; and *Fadelsak v. Hagley,* 4th Dist. Lawrence No. 02CA41, 2003-Ohio-3413, ¶ 9. Leases and options to purchase are contracts that are independent of each other, even if they are signed at the same time or contained in the same document. *Garrido v. Empty Nester Homes, Ltd.*, 10th Dist. Franklin No. 03AP-518, 2004-Ohio-108, ¶ 14, citing *Ahmed v. Scott*, 65 Ohio App.2d 271, 277, 418 N.E.2d 406 (6th Dist.1979).

{¶ 27} If the 2020 document is an option contract, it exists independent of the 2018 lease. That is, the 2018 lease remained valid until it expired in February 2022 and Strozier was occupying the property as a holdover tenant when she received the 30-day notice to vacate. But, if the 2020 document is a new lease, that means that Strozier was not a holdover tenant. Instead, she was occupying the property pursuant to the new lease

12.

agreement.  We must, therefore, review the 2020 document to determine its legal

significance.

### C. The 2020 document is ambiguous.

{¶ 28} The first step in our review is determining whether the 2020 document is

clear and unambiguous.  When we review a contract, we read the document as a whole

and presume that the parties' intent is reflected in the language of the document.  *Kelly v.*

*Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the

syllabus.  "As a matter of law, a contract is unambiguous if it can be given a definite legal

meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797

N.E.2d 1256, ¶ 11.  When the contract language is clear and unambiguous, we can only

consider the writing itself to determine the parties' intent.  *Id.*

{¶ 29} On the other hand, a contract is ambiguous if its meaning cannot be

determined from the four corners of the document, or if its language is susceptible to

more than one reasonable interpretation.  *LublinSussman Group LLP v. Lee*, 2018-Ohio-

666, 107 N.E.3d 724, ¶ 20 (6th Dist.).  Whether a contract is ambiguous is a matter of

law that we review de novo.  *Nationwide Mut. Fire Ins.*, 73 Ohio St.3d at 108, 652

N.E.2d 684.

{¶ 30} In this case, we find that the 2020 document is ambiguous.  Slak argues

that "[t]he terms of the Lease and Option are clearly unambiguous[,]" and nothing in the

2020 document extended the term of the lease, so the trial court erred by finding that

13.

Strozier was entitled to possession of the house. But the 2020 document is not "clearly" an option contract, as Slak claims. Nor is it clearly a lease agreement. In fact, it contains elements of both an option contract and a lease agreement, but does not clearly and unambiguously fall into either category.

{¶ 31} To start, the agreement is not clearly an option contract. The 2020 document does not contain an explicit offer from Slak to sell the home to Strozier. It *implies* that a sale is contemplated—for example, by using "option to purchase" in its title, including a "Sales Price," and referring to the possibility of "accelerated pay-off/transfer of deed"—but nowhere in the document did Slak state that she wanted to offer the property for sale to Strozier, if Strozier chose to buy it. The 2020 document also lacks a term indicating how long Slak agreed to leave the offer open (i.e., the period in which Strozier was able to exercise her option to purchase). The "Schedule of Payments & Credits," which is described in the 2020 document as an "illustration" of how Slak's rent payments could be applied (presumably to the sales price), lists credit amounts through 2028. This could indicate that Strozier is able to exercise the option to purchase through 2028, but it is unclear from the four corners of the document if that is what the parties intended. Strozier also paid a "Non-Refundable Option Consideration Fee" that the 2020 document refers to as both a "security deposit" and "Faith Money," and says "Lessee will then be able to apply that [fee] in this Lease with Option to Purchase plan utilizing the [fee] * * *." Whether that payment was meant to be consideration for an

14.

option contract, a security deposit for a lease agreement, or something else, and how or when the fee might apply to the parties' agreement, is entirely unclear.

{¶ 32} But the 2020 document is not clearly a lease, either. Notably, the 2020 document does not explicitly address Strozier's right to possession of the house. And, although the document includes "Lease" in its title, refers to the "Lessor" and "Lessee," mentions a "security deposit," lists a "Monthly Rent" and late-payment fee, and refers to a payment "grace period," it does not have the same level of specificity about the terms and conditions controlling Strozier's use and occupancy of the property as the parties' 2018 lease.

{¶ 33} On the whole, we find that the 2020 document cannot be given a definite legal meaning and is susceptible to more than one reasonable interpretation. *Westfield Ins.*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11; *LublinSussman Group*, 2018-Ohio-666, 107 N.E.3d 724, at ¶ 20. Thus, we agree with the trial court that the 2020 document is ambiguous.

**D. The trial court did not abuse its discretion in interpreting the 2020 document.**

{¶ 34} Next, we must determine whether the trial court abused its discretion in interpreting the 2020 document.

{¶ 35} An ambiguity in a contract creates an issue of fact that the court must resolve using extrinsic evidence. *LublinSussman* at ¶ 17. The outside evidence can help clarify the circumstances surrounding the agreement, what the parties intended to

15.

accomplish with the agreement, and what the parties thought the agreement meant. *Id.* at ¶ 21, citing *Mosier v. Parry*, 60 Ohio St. 388, 54 N.E. 364 (1899), paragraph one of the syllabus. If the extrinsic evidence does not clarify the meaning of the contract, the court will strictly construe the ambiguous language against the party that drafted the contract. *Id.*; *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 314, 667 N.E.2d 949 (1996).

{¶ 36} Here, the parties did not present much evidence of their intent at the eviction hearing. The extrinsic evidence relating to the 2020 document that they did present included (1) Slak's understanding that the 2020 document was an option contract giving Strozier the option to purchase the house; (2) Slak's belief that Strozier could exercise her option only if she is current with rent payments; (3) Slak's testimony that Strozier did not and could not exercise her option to purchase; (4) Strozier's understanding that Slak "promised [Strozier] to buy" the house and that the purchase plan in the 2020 document was in effect; and (5) Strozier's belief that she had paid more than half of the purchase price under the plan, and was current on all payments, but Slak had confused her records with some other tenant's. Nothing in this evidence clarifies what the parties intended when they signed the 2020 document.

{¶ 37} As a result, the trial court construed the 2020 document against Slak, the drafter, and determined that it was "a monthly lease lasting until 2028, unless [Strozier] should not be current on payments." Based on the poorly-drafted agreement and the minimal evidence presented at the eviction hearing, this interpretation was not

16.

unreasonable, arbitrary, or unconscionable, and was supported by some competent, credible evidence. The agreement contemplates Strozier paying monthly rent and refers to monthly payments and credits through 2028, which—in the absence of any contract language or extrinsic evidence more clearly explaining the parties' intent—could reasonably be construed as the parties agreeing to Strozier's use and occupancy of the home for nine years on the condition that she timely pay rent of $650 per month and property taxes of "$327/half year."

{¶ 38} Therefore, we find that the trial court's interpretation of the 2020 document was not an abuse of discretion.

### E. The trial court's conclusions about late payments was not an abuse of discretion.

{¶ 39} Finally, we must determine whether the trial court's finding that Strozier was current on her payments—and, consequently, in compliance with the terms of the 2020 document as the court interpreted it—so that she was entitled to possession of the property.

{¶ 40} In its decision, the trial court said that it chose to rely on the magistrate's credibility determinations because of the lack of evidence presented at the eviction hearing. This was an appropriate course of action. A trial court is permitted to rely on the magistrate's credibility determinations when it conducts its independent review of the magistrate's decision. *Rodriguez v. Frietze*, 4th Dist. Athens No. 04CA14, 2004-Ohio-7121, ¶ 27. And, "[a]s the trier of fact, the magistrate [i]s free to believe or disbelieve

17.

any witness." *Habib v. Shikur*, 10th Dist. Franklin No. 17AP-735, 2018-Ohio-2955, ¶ 19. Although the magistrate did not put any explicit credibility determinations in his decision, based on the scant evidence in the record, it is fair to assume (as the trial court did) that the magistrate found Strozier more credible because he issued judgment in her favor. *See, e.g., Rinaldi v. Rinaldi*, 4th Dist. Athens No. 12CA41, 2015-Ohio-2852, ¶ 36 (upholding trial court's decision based on its implicit determination that one party's testimony was more credible than the other's). This was not an abuse of discretion, and therefore, was not reversible error.

{¶ 41} In sum, the 2020 document—which the parties signed during the term of the 2018 lease and was potentially effective through 2028—is ambiguous as a matter of law because the parties' intent cannot be determined from its four corners and it is reasonably susceptible to two or more interpretations. The trial court concluded, based on the evidence presented to the magistrate, that extrinsic evidence did not clarify the parties' intent when they signed the agreement, so the court construed the 2020 document against its drafter, Slak. This decision is supported by some competent, credible evidence in the record and is not an abuse of discretion. Finally, the trial court relied on the magistrate's implicit credibility determination—which it was permitted to do—to find that Strozier was current with her financial obligations under the 2020 document and was thus entitled to possession of the property. Again, this was not an abuse of discretion.

18.

**{¶ 42}** Because the trial court correctly determined that the 2020 document is ambiguous and did not abuse its discretion in construing the parties' agreement, Slak's assignment of error is not well-taken.

### III. Conclusion

**{¶ 43}** For the foregoing reasons, the March 3, 2023 judgment of the Toledo Municipal Court is affirmed. Slak is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.               _____
                                                               JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, J.                _____
CONCUR.                                                  JUDGE

_____
                                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.